LAW OFFICE OF
**JOSHUA BLACK**
PLC

Joshua Black, #032241
Yuzhuo Jodi Li, #036321
Law Office of Joshua Black, PLC
2999 N 44th St, Suite 308
Phoenix, AZ 85018
(623) 738-2225 (p) • (623) 670-5934 (f)
josh@azemploymentlawyer.com
jodi@azemploymentlawyer.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| **ALEXANDER FLORES**, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>**BASHAS' INC.**, an Arizona corporation,<br><br>Defendant. | No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Alexander Flores, ("**Plaintiff**" or "**Flores**"), by and through undersigned counsel, hereby alleges as follows:

## NATURE OF ACTION

**1.** This is an action under Title VII of the Civil Rights Act 1964 ("Title VII"), Arizona Civil Rights Act ("ACRA"), and Arizona Revised Statues ("ARS") against Bashas' Inc. ("Bashas") for its unlawful employment practices of discrimination on the basis of race; disparate

1

treatment; harassment; retaliation; intolerable working conditions; and intentional infliction of emotional distress.

## JURISDICTION AND VENUE

**2.** This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. § 1331.

**3.** The unlawful employment actions alleged herein were committed in whole or in part within the jurisdiction of the United States District Court for the District of Arizona.

**4.** Venue is proper in this District under 28 U.S.C. § § 1391 (b) and (c) because all or a substantial part of the acts or omissions giving rise to the claims occurred in the state of Arizona. Plaintiff was employed by Defendant in this District.

## PROCEDURE

**5.** Plaintiff has satisfied all procedural requirements for commencing this action.

**6.** On August 3, 2020, Plaintiff filed a charge of discrimination with the Arizona Attorney General's Office, Civil Rights Division and the Equal Employment Opportunity Commission, contending that he has been discrimination against in violation of the Arizona Civil Rights Act and Title VII of the Civil Rights Act of 1964.

**7.** On January 15, 2021, the Equal Employment Opportunity Commission issued a Notice of Right to Sue with regard to Plaintiff's charge.

**8.** Plaintiff has filed this lawsuit within 90 days of the date he received the Right-to-Sue letter.

## PARTIES

**9.** Plaintiff is a United States Citizen who resides in Arizona.

**10.**     Defendant is a registered corporation operating within the greater Phoenix area as a grocery store.

**11.**     At all relevant times, Plaintiff was an "employee" of Defendant as defined in the Title VII, ACRA and ARS provisions.

**12.**     At all relevant times, Defendant was the "employer" of Plaintiff as defined in the Title VII, ACRA and ARS provisions.

**13.**     At all relevant times, Defendant has been a corporation organized under the corporate laws of Arizona and doing business in Arizona.

**14.**     At all relevant times, Defendant has been engaged in interstate commerce and has been an enterprise whose gross annual volume of sales made, or business done is greater than $500,000.

## STATEMENT OF FACTS

**15.**     Flores worked at Bashas' for approximately seventeen years.

**16.**     Flores has worked as Seafood Manager in the Meat Department for approximate fourteen years, and as a Receiver and Driver in Grocery Department for approximately three years.

**17.**     On or about 16, 2019, Flores' job assignment was Driver but was asked by Store Director, Sherry Powers ("Powers"), to work as a Receiver covering for the normal Receiver who took a leave that day.

**18.**     Flores accepted the changed job assignments and was placed in a grocery store.

**19.**     Around 7:45 am, Wine Cellar Master, Steve Sphar ("Sphar") arrived the store in a hurry and was exhibiting behaviors that caused Flores to believe he was intoxicated.

**20.**     Unprovoked, Sphar first yelled at the Vendor in their store.

**21.**	Flores tried to defuse the confrontation between Sphar and Vendor.

**22.**	Flores interrupted their argument trying to pull them apart.

**23.**	Then, Sphar began to target at Flores and assault him verbally.

**24.**	Sphar made derogatory comments about his race – Hispanic

**25.**	Sphar forced his face and forehead against Flores.

**26.**	Several other employees were in the grocery store while the incident happened; they all pushed themselves against the wall, in fear of Sphar.

**27.**	Being the center of Sphar's anger, Flores had to step back and move into a different direction to get away from him.

**28.**	Sphar continued to approach Flores and curse him.

**29.**	Sphar called Flores "dumbass" and other names.

**30.**	Sphar ultimately shoved Flores and viciously attacked him.

**31.**	On the day when Sphar verbally and physically attached Flores, the store camera was turned on and recorded the entire incident.

**32.**	Flores reported the incident immediately to his director Powers and expected to be contacted over the next couple of days.

**33.**	Nonetheless, Powers and Bashas' ignored Flores' report and took no actions over several weeks.

**34.**	Since Bashas never gave updates to Flores, Flores had to call Human Resources on his own seeking protection.

**35.**	Human Resources instructed Flores to draft a formal statement.

**36.**	After Flores submitted a written statement to Human Resources, they advised Flores to wait until being contacted for interview.

37. Again, Human Resources and Bashas' did not contact Flores and left him in fear of being at work.

38. After a long wait, Flores was advised to contact Human Resources Lead, Ray O'Connor ("O'Connor").

39. O'Connor refused to take Flores' call and she instructed Human Resources Representative, Matilda Curiel ("Curiel") to contact Flores.

40. Curiel told Flores that he "needed to drop it" and "just get over it and move on."

41. Curiel's conversation with Flores involved other scare tactics.

42. In fear of being at work, Flores had no other options than to contact O'Connor again and left several messages before got an answer.

43. O'Connor finally returned Flores' call and she continued to use scare tactics of intimidation.

44. O'Connor brought up Flores' prior misconduct occurred in his sixteen-year career with Bashas' that may lead to a discipline as tactics of the intimidation.

45. Those prior misconduct O'Connor brought up have no connections with the event in question.

46. O'Connor threatened to discipline Flores for his misconduct in prior years if he does not "just get over it and move on."

47. The day after Flores discussed this event with Human Resources, Powers kept Flores at her office afterwork and stated she received an anonymous tip about Flores' misconduct.

48. The tip had no foundation in fact.

49. Powers' accusation was solely based on the unsubstantiated tip.

50. Powers' accusation was part of Bashas' intimidation to let Flores "just get over it and move on."

51. Sphar received no disciplinary actions other than a written conference memorandum.

52. The written conference memorandum Sphar received was merely detailing the incident and advising him not to engaged in similar or retaliatory conduct.

53. Bashas' has not placed Sphar on suspension, leave or discipline in any form.

54. Bashas' gave suspension or termination as discipline to aggressors in similar incidents.

55. Due to Bashas' failure to remove Sphar, Flores had to work side by side with Sphar every single day.

56. Flores was left in fear of both being attacked by Sphar **and** being fired by Bashas'.

57. This ordeal has caused Flores serious emotional distress and physical health deterioration.

58. Flores started to visit his doctor frequently and took medicine to combat his emotional disorders and physical health issues.

59. Flores had to take an approved medical leave from November 18, 2019.

60. On February 17, 2020, Bashas' sent Flores a letter advising him that his leave had expired and instructed him to provide medical information for extended leave.

61. Flores did not provide his medical information to Bashas'.

62. On July 15, 2020, Bashas' terminated Flores' employment with an effective date dating back to February 16, 2020.

## COUNT ONE
## DISCRIMINATION ON THE BASIS OF RACE

63. Plaintiff incorporates each and every allegation above as fully set forth herein.

64. Defendant addressed the incident unfairly due to its discrimination against Plaintiff on the basis of his race.

65. The acts committed by the Bashas' were unlawful employment practices of discrimination in violation of Title VII, 42 U.S.C. § 2000e and A.R.S. § 41-1463.

66. Plaintiff has suffered from Defendant's discrimination on basis of his race as a Hispanic.

67. Plaintiff has experienced unfair and disparate treatment in comparison to other non-Hispanic employees of Defendant.

68. As a direct and proximate result of Defendant's discrimination, Plaintiff has suffered from emotional distress, physical illness, medical expenses, loss of pay, legal fees and etc.

## COUNT TWO
## DISPARATE TREATMENT UNDER TITLE VII

69. Plaintiff incorporates each and every allegation above as fully set forth herein.

70. Defendant gave the aggressor in prior similar incidents suspension or termination of employment as disciplinary actions.

71. Defendant addressed the incident in question unfairly due to its discrimination against Plaintiff on the basis of his race.

72. Defendant treated Plaintiff less favorably than other similarly situated individuals.

73. As a direct and proximate result of Bashas' disparate treatment, Plaintiff has suffered from emotional distress, physical illness, medical expenses, loss of pay, legal fees and etc.

## COUNT THREE
## HARASSMENT UNDER TITLE VII

74. Plaintiff incorporates each and every allegation above as fully set forth herein.

75. Defendant purposefully harassed Plaintiff by threatening to give him disciplinary actions using his misconduct in prior years as a pretext.

76. Defendant purposefully harassed Flores by accusing him of misconduct without any factual foundation.

77. Defendant's harassment left Plaintiff in fear of losing his employment while being in fear of being attacked by Sphar again.

78. The harassment was severe enough to alter working environment conditions and create a hostile working environment.

79. As a direct and proximate result of Defendant's harassment, Plaintiff has suffered from emotional distress, physical illness, medical expenses, loss of pay, legal fees and etc.

## COUNT FOUR
## RETALIATION UNDER TITLE VII

80. Plaintiff incorporates each and every allegation above as fully set forth herein.

81. In reporting the incident of being verbally and physically assaulted by Saphar, Plaintiff engaged in protected activity.

82. After Plaintiff reported the incident to Defendant, Defendant retaliated against him by threatening to give him disciplinary actions using his misconduct in prior years as a pretext.

83. After Plaintiff reported the incident to Defendant, Defendant retaliated against him by accusing him of misconduct without any factual foundation.

84. Defendant's untruthful accusation was **one day after** Plaintiff's discussion with Human Resources Representative.

85. There is a causal connection established by time relevance between Plaintiff's protected activity and the adverse actions taken by Defendant.

86. As a direct and proximate result of Defendant's *purposeful* retaliation, Flores has suffered from emotional distress, physical illness, medical expenses, loss of pay, legal fees and etc.

## COUNT FIVE
## CONSTRUCTIVE DISCHARGE DUE TO HOSTILE WORKING ENVIRONMENT

87. Plaintiff incorporates each and every allegation above as fully set forth herein.

88. After Plaintiff reported the incident to Defendant, his working environment became so hostile that qualified as intolerable within the meaning of A.R.S. § 23-1502.

89. Defendant and its employees (including but not limited to Sphar, Powers, Curiel, and O'Connor) created an intolerable work conditions for Flores by physical and verbal assault, harassment and retaliation.

90. As a direct and proximate result of Defendant's assault, discrimination, harassment and retaliation, the work environment became so hostile that a reasonable employee would find it intolerable and have to terminate his employment.

91. Due to the hostile work environment created by Defendant, Plaintiff was constructively discharged from his employment.

92.    As a direct and proximate result of constructive discharge due to hostile work environment, Plaintiff has suffered from emotional distress, physical illness, medical expenses, loss of pay, legal fees and etc.

## COUNT SIX
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

93.    Plaintiff incorporates each and every allegation above as fully set forth herein.

94.    Defendants' conduct to harass and retaliate against Plaintiff and not the protect him from Saphar's verbal and physical assault was extreme and outrageous.

95.    Plaintiff repeatedly reported the incident to Defendant and actively sought protection.

96.    There is a store camera turned on and record the incident.

97.    Defendant knew or reasonably should have known the nature of Sapahr's assault.

98.    Defendant knew or reasonably should have known that their failure to protect Plaintiff in that situation would cause Plaintiff emotional distress and serious anxiety.

99.    Defendant knew or reasonably should have known that their harass and retaliation in that situation would cause Plaintiff emotional distress and serious anxiety.

## DAMAGES

100.    As a direct and proximate result of Defendant violations of Plaintiff's protected rights in each of the above-mentioned claims for relief, Plaintiff suffered and continues to suffer from emotional distress, physical illness, medical expenses, loss of pay, legal fees and etc. Plaintiff is entitled to compensatory damages to make him whole.

101. As set out above, Defendant's actions demonstrated a malic to harm Plaintiff and a reckless disregard for the protected rights and well-being of him. Thus, Plaintiff is entitled to punitive damages.

102. Plaintiff is entitled legal fees and costs of this action and previous charge with the the Equal Employment Opportunity Commission, including attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k);

**WHEREFORE**, Plaintiff Flores respectfully prays for judgment against Defendant Bashas', and asks this Court to:

(A) Award Plaintiff compensatory damages for his emotional distress, physical illness, medical expenses, loss of pay and any other appropriate relief to make Plaintiff whole and compensate him for Defendant's adverse employment actions;

(B) Award Plaintiff legal fees and costs of this action and previous charge with the Equal Employment Opportunity Commission, including attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k);

(C) Award Plaintiff punitive damages; and

(D) Award Plaintiff other legal and equitable relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

**RESPECTFULLY SUBMITTED** this 23rd day of March 2021.

*Law Office of Joshua Black, PLC*

By: /s/ *Joshua C. Black*
Joshua C. Black
2999 N 44th St, Ste 308
Phoenix, AZ 85018
*Attorneys for Plaintiff*